```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF MONTANA
          HELENA DIVISION
```

| | |
|---|---|
| STEPHEN P. KELLY,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br>MONTANA RAIL LINK, INC.,<br>THOMAS WALSH, and CARL R. ICE,<br><br>Defendants. | CV 15-64-H-DLC-JTJ<br><br>FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE<br>JUDGE |

This is a nuisance action in which Mr. Kelly complains about the sound of train horns in Helena, Montana. The following motions are pending:

Defendant Carl R. Ice's Motion to Dismiss (Doc. 12);

Defendant BNSF Railway Company's Motion to Dismiss (Doc. 14);

Defendant Thomas J. Walsh's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 16); and

Defendant Montana Rail Link Inc.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 18).

The motions to dismiss should be granted.

### I. BACKGROUND

Mr. Kelly is proceeding without counsel. He filed this nuisance action

1

against BNSF and its CEO/President and Montana Rail Link and its CEO/President. Mr. Kelly identifies Carl R. Ice as the President and CEO of Montana Rail Link and Thomas Walsh as the President and CEO of BNSF. (Doc. 2 at 2-3.) Mr. Ice clarified that he is actually BNSF's President and CEO, and Mr. Walsh states that he is, in fact, the President and CEO of Montana Rail Link. (Doc. 13 at 2; Doc. 17 at 2 n. 1.)

Mr. Kelly complains that Defendants BNSF and Montana Rail Link use train horns at the public crossings in Helena, Montana. Mr. Kelly alleges the noise level is "excessive" and the horns are sounded in "the late p.m. hours" and "during the standard daylight business hours." Mr. Kelly allegedly lives approximately two miles from the Phoenix Road rail crossing and has "severe hearing impairments" from the noise. (Doc. 2 at 4-6.)

Mr. Kelly alleges Defendants' use of train horns at public crossings violates Helena's noise ordinance and the federal Noise Control Act of 1972, 42 U.S.C. § 4901 et seq. (Doc. 2 at 3-4.) Mr. Kelly seeks an order from the Court enjoining Defendants from (1) sounding train horns after 10 p.m. and (2) using train horns otherwise than "<u>solely once</u> at a radius of 50 feet[] prior to the entrance of the actual street crossing." (Doc. 2 at 7; emphasis in original.)

## II. STANDARDS

**Rule 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true and the question is whether the lack of federal jurisdiction appears from the face of the pleading itself. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts do not accept the truth of legal conclusions merely because they are cast in the form of factual allegations. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

**Rule 12(b)(2)**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). When the motion is based on written materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* The plaintiff cannot "simply rest on the bare allegations

of its complaint," but the Court takes as true uncontroverted allegations in the complaint. *Id.* (internal citations and quotation marks omitted).

**Personal Jurisdiction**

**Consent to Personal Jurisdiction**

Parties may consent to a court's exercise of personal jurisdiction over them. Consent generally requires a finding that the defendant voluntarily submitted to the jurisdiction of the Court. *See S.E.C. v. Blazon Corp.*, 609 F.2d 960, 965 (9th Cir. 1979); *Milanovich v. Schnibben*, 160 P.2d 562, 564 (Mont. 2007).

**Personal Jurisdiction under Montana's Long-Arm Statute**

Personal jurisdiction analysis involves two parts. *Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987). First, the exercise of personal jurisdiction over a non-resident defendant must comport with the states's long-arm statute. *Omeluk v. Langsten Slip and Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995) (citing *Chan v. Soc. Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). Second, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice embodied in the due process clause. *Id.* If the requirements of the long-arm statute are not met, the Court need not address the due process issue.

If "there is no applicable federal statute governing personal jurisdiction, the

district court applies the law of the state in which the district court sits."

*Schwarzenegger*, 374 F.3d at 800. Montana Rule of Civil Procedure 4(b)(1) serves as Montana's long-arm statute and provides:

> (b) Jurisdiction of Persons.
> (1) Subject to Jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;
> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
> (F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or, having its principal place of business within Montana; or
> (G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1). Rule 4(b)(1) embodies principles of both general and specific jurisdiction.

The first inquiry under this rule is whether a defendant is "found within Montana." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003). The Montana Supreme Court stated:

> A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he

or she may be deemed to be physically present there. A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

*Bi-Lo Foods, Inc. v. Alpine Bank*, 955 P.2d 154, 157 (Mont. 1998) (citing *Lurie v. 8182 Maryland Associates*, 938 P.2d 676, 678 (Mont. 1997)).

Even if a nonresident maintains minimal contacts with the forum, he may be subject to jurisdiction if the plaintiff's cause of action arises from any of the enumerated activities of Rule 4(b)(1). *Bi-Lo Foods*, 955 P.2d at 157.

**Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 663.

### III.   ANALYSIS

**Defendant Carl R. Ice's Motion to Dismiss (Doc. 12)**

Nothing indicates that Mr. Ice has voluntarily submitted to the Court's exercise of personal jurisdiction over him. Mr. Ice is not subject to general jurisdiction pursuant to Rule 4(b)(1) because he is not found within Montana. Mr. Ice is CEO of BNSF, and BNSF is a Delaware corporation with its principal place of business in Texas. (Doc. 13 at 6.) Thus, Mr. Ice would be subject to the jurisdiction of Montana courts only if specific jurisdiction were found. Mr. Kelly has not alleged that Mr. Ice personally, or through his agent or employee, committed any of the acts enumerated in Rule 4(b)(1)(A) through (G). Accordingly, the undersigned concludes that Montana's long-arm statute does not permit the exercise of specific jurisdiction over Mr. Ice, and the Court need not reach the question whether due process permits the exercise of jurisdiction.

Moreover, Mr. Kelly does not mention Mr. Ice after the introductory paragraph and has not pleaded facts suggesting that Mr. Ice "acted against the best interests of the corporation, for his own pecuniary benefit, or with the intent to harm [the plaintiff] personally." *Harrell v. Farmers Educ. Coop.*, 314 P.3d 920, 932 (as a general rule, officers and agents of a corporation must be shielded from personal liability; an officer or director is personally liable if he "acts against the best interests of the corporation, acts for his own pecuniary benefits, or with the

7

intent to harm the plaintiff").

Mr. Ice's motion to dismiss should be granted.

**Defendant BNSF Railway Company's Motion to Dismiss (Doc. 14)**

Defendant BNSF argues Mr. Kelly's claim that the sounding of train horns violates Helena's noise ordinance is preempted by federal law.

Article VI of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. As such, any law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). To determine a preemption issue, the district court must presume that the historic police powers of the states are not to be superseded by a federal act unless preemption is found to be "the clear and manifest purpose of Congress." *Id.* at 516; *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

State law is preempted by federal law where: (1) Congress explicitly defines the extent to which its enactments preempt state law (express preemption); (2) state law regulates conduct in a field that Congress intended the federal government to exclusively occupy (field preemption); and (3) it is impossible to comply with both state and federal requirements or state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress

(conflict preemption). *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-80 (1990). The overriding consideration is whether Congress intended to preempt state law. *Id*. at 80; *Medtronic v. Lohr*, 518 U.S. 470 (1996).

The Court should find preemption if Congress's intent either is explicitly stated in the statute's language or is implicitly contained in its structure and purpose. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 95 (1983).

BNSF argues the Federal Railroad Safety Act expressly preempts Helena's noise ordinance. Under the Act, "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). After federal standards have been promulgated, "[s]tates may adopt more stringent safety requirements when necessary to eliminate or reduce an essentially local safety hazard, if the standards are not incompatible with federal laws or regulations and not an undue burden on interstate commerce. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662 (1993) (internal quotation marks omitted). "[P]re-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Id*. at 664.

Pursuant to federal regulations, horns must "be sounded at least 15 seconds,

but not more than 20 seconds, before the locomotive enters the crossing." If the locomotive is traveling in excess of 60 miles per hour, the horn cannot be sounded "more than one-quarter mile . . . in advance of the nearest public highway-rail grade crossing." 49 C.F.R. § 222.21(b)(2)-(3). The sounding of the horn must consist of "two long blasts, one short blast and one long blast." 49 C.F.R. § 222.21(a). "[A] locomotive engineer may sound the locomotive horn to provide a warning to animals, vehicle operators, pedestrians, trespassers or crews on other trains in an emergency situation if, in the locomotive engineer's sole judgment, such action is appropriate in order to prevent imminent injury, death, or property damage." 49 C.F.R. § 222.23(a)(1).

The regulations also allow public road authorities to create "quiet zones within which locomotive horns need not be sounded." 49 C.F.R. §§ 222.3, 222.45. A public authority can create a quiet zone by applying to the Federal Railroad Administration for approval or by complying with certain requirements set forth in the federal regulations. 49 C.F.R. § 222.39.

These regulations "preempt[] any State law, rule, regulation, or order governing the sounding of the locomotive horn at public highway-rail grade crossings, in accordance with 49 C.F.R. § 20106." 49 C.F.R. § 222.7.

Mr. Kelly's attempt to apply the Helena noise ordinance to the sounding of

locomotive horns at public highway-rail grade crossings fails. This sounding of locomotive horns is within the subject matter of the federal regulations cited above. Mr. Kelly's claim is therefore preempted. BNSF's motion to dismiss should be granted.

**Defendant Thomas J. Walsh's Motion to Dismiss (Doc. 16)**

Mr. Kelly does not mention Mr. Walsh after the introductory paragraph and has not made a direct or specific claim against Mr. Walsh. Mr. Kelly has not pleaded facts suggesting that Mr. Walsh "acted against the best interests of the corporation, for his own pecuniary benefit, or with the intent to harm [the plaintiff] personally." *Harrell*, 314 P.3d at 932 (as a general rule, officers and agents of a corporation must be shielded from personal liability; an officer or director is personally liable if he "acts against the best interests of the corporation, acts for his own pecuniary benefits, or with the intent to harm the plaintiff").

Mr. Walsh's motion to dismiss should be granted because Mr. Kelly failed to state a prima facie claim against Mr. Walsh.

**Defendant Montana Rail Link Inc.'s Motion to Dismiss (Doc. 18)**

Montana Rail Link argues that Mr. Kelly's request, whether based on the Helena noise ordinance or common law, is preempted. Moreover, Montana Rail Link notes that the Noise Control Act does not apply "to the sound emitted by a

warning device such as a horn, whistle or a bell when operated for the purpose of safety." (Doc. 19 at 7, citing 40 C.F.R. § 201.10.)

Based on the discussion above regarding preemption, the undersigned agrees that Mr. Kelly's request is preempted. The Noise Control Act does not apply to locomotive horns at public highway-rail grade crossings because the horns are operated for the purpose of safety. 40 C.F.R. § 201.10; 49 C.F.R. § 222.1. Montana Rail Link's motion to dismiss should be granted.

## IV. CONCLUSION

The Court does not have personal jurisdiction over Mr. Ice. Mr. Kelly failed to state a claim against Mr. Walsh. Mr. Kelly's request that the Court enjoin Defendants from (1) sounding train horns after 10 p.m. and (2) using train horns otherwise than "<u>solely once</u> at a radius of 50 feet[] prior to the entrance of the actual street crossing" is preempted by federal regulations. Therefore, the undersigned issues the following:

### RECOMMENDATIONS

1. Defendant Carl R. Ice's Motion to Dismiss (Doc. 12) should be GRANTED.

2. Defendant BNSF Railway Company's Motion to Dismiss (Doc. 14) should be GRANTED.

3. Defendant Thomas J. Walsh's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 16) should be GRANTED.

4. Defendant Montana Rail Link Inc.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 18) should be GRANTED.

5. This matter should be dismissed, and the Clerk of Court should be directed to enter judgment in favor of Defendants.

DATED this 11th day of May, 2016.

_____
John Johnston
United States Magistrate Judge